In re Progress Energy Shareholder Litigation, 2011 NCBC 44.

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                                         SUPERIOR COURT DIVISION
COUNTY OF WAKE                                   11 CVS 739


In re Progress Energy Shareholder        )
Litigation                                    )

## FINAL ORDER AND JUDGMENT

THIS MATTER comes before the court upon the Motion of Plaintiffs Pipefitters Local Union #357 Trust Funds, Louisiana Municipal Police Employees' Retirement System, David Thomas, Ethel Mitchell, Lorraine Engel, Bells Candy, LLC, Harry Stecker and Stephen Bushansky for Final Approval of Settlement and Award of Attorneys' Fees and Expenses (the "Motion"), filed in this consolidated civil action (the "Action") on October 20, 2011; and

THE COURT, after considering the Motion, submissions of counsel, objections to the Motion and other appropriate matters of record, makes the following FINDINGS of FACT:

[1]      On January 10, 2011, Progress Energy, Inc. ("PGN") announced that it had entered into an Agreement and Plan of Merger ("Merger Agreement") with Diamond Acquisition Corporation ("Diamond"), a wholly owned subsidiary of Duke Energy Corporation ("Duke Energy").  Pursuant to the Merger Agreement, PGN and Duke Energy would be combined via the merger ("Merger") of PGN and Diamond in a stock-for-stock transaction, with the new company being called Duke Energy and PGN's shareholders receiving 2.6125 shares of Duke Energy common stock in exchange for each share of PGN stock (the "Proposed Transaction").

[2]     Beginning on January 14, 2011, ten (10) separate Plaintiffs, each a purported shareholder of PGN, filed putative class action lawsuits in Wake County Superior Court, alleging, among other things, that the PGN Board of Directors (the "Board") breached its fiduciary duties to PGN shareholders and that Duke Energy aided and abetted such breaches in connection with the negotiation and approval of the Proposed Transaction.

[3]     The above-mentioned class actions subsequently were designated Mandatory Complex Business Cases under N.C. Gen. Stat. § 7A-45.4 and assigned to the undersigned.

[4]     On March 22, 2011, Plaintiffs filed a Consent Motion for Consolidation and Appointment of Interim Lead Counsel, Interim Executive Committee Members and Interim Co-Liason Counsel ("Motion for Consolidation").

[5]     On May 12, 2011, the court entered an Order requiring the submission of detailed confidential information setting forth each firm's qualifications and plan for litigating the Action, which Plaintiffs' attorneys submitted on May 20, 2011, and discussed with the court at a hearing and status conference on June 7, 2011.

[6]     On June 17, 2011, the court, under Rule 42(a), North Carolina Rules of Civil Procedure ("Rule(s)"), consolidated the ten (10) separately-filed actions related to the Merger, bearing Wake County file numbers 11 CVS 646, 11 CVS 662, 11 CVS 739, 11 CVS 804, 11 CVS 375, 11 CVS 1226, 11 CVS 1339, 11 CVS 2000 and 11 CVS 2302, into the above-captioned Action.  On the same day, the court also entered a Case Management Order establishing case procedures, setting case deadlines and setting July 29, 2011, as the hearing date for Plaintiffs' anticipated motion for preliminary

injunction relative to the shareholder votes. The court further appointed Jason S. Cowart, Esq. of Pomerantz Haudek Grossman & Gross LLP as Lead Counsel ("Lead Counsel"); Brian C. Kerr, Esq. of Brower Piven, PC, Robert Kaplan, Esq. of Kaplan Fox & Kilsheimer LLP, Christine Azar, Esq. of Labaton Sucharow, LLP, Stuart A. Davidson, Esq. of Robbins Geller Rudman & Dowd, LLP as Executive Committee Members and Gary W. Jackson, Esq. of Jackson & McGee, LLP and Larry S. McDevitt, Esq. of The Van Winkle Law Firm as Liason Counsel.

[7]     On March 17, 2011, Duke Energy filed with the Securities and Exchange Commission ("SEC") a preliminary joint proxy statement and prospectus on Form S-4 on behalf of Duke Energy and PGN regarding the Proposed Transaction, which it thereafter amended five times on April 8, 2011, April 25, 2011, May 13, 2011, June 30, 2011 and July 7, 2011 (the "Proxy").

[8]     On June 21, 2011, Plaintiffs filed their Verified Consolidated Amended Class Action Complaint ("Consolidated Complaint"), alleging that the PGN Board breached its fiduciary duty in connection with the Proxy and Duke Energy aided and abetted in the PGN Board's breach. Plaintiffs also alleged that the Proxy was deficient and did not provide adequate disclosure to PGN shareholders in connection with whether to vote for or against the Proposed Transaction.

[9]     Subsequently, Plaintiffs conducted a significant amount of discovery.

[10]    On July 7, 2011, PGN and Duke Energy jointly announced that special meetings of their respective shareholders to vote on the Proposed Transaction would be held on August 23, 2011.

[11]    On July 11, 2011, the parties entered into an agreement in principle, outlined in a Memorandum of Understanding ("MOU"), providing for the proposed settlement of the Action.

[12]    On July 15, 2011, PGN filed with the SEC and made available to PGN stockholders a Form 8-K, which included the additional disclosures requested and negotiated by Plaintiffs that constitute the consideration received in exchange for the proposed settlement.

[13]    Effective July 27, 2011, the settlement was memorialized in the Stipulation and Agreement of Compromise, Settlement, and Release ("Settlement Agreement" or "Settlement").[1]

[14]    In sum, the Settlement Agreement culminated in material disclosures ("Disclosures") that provided shareholders with information concerning: (a) why the PGN Board discontinued negotiations with potential alternative bidder Dominion, (b) how the Proposed Transaction compared to similar deals, (c) whether the Proposed Transaction was fair in light of the projected value of post-merger Duke Energy and (d) the risks that post-merger Duke Energy faces.  The Disclosures also included details of a comparable transactions analysis performed by PGN's lead investment bank, Lazard Fréres ("Lazard").  The Disclosures were material to the Plaintiffs' claims.  Further, the Disclosures benefited PGN shareholders by providing them with additional material information to cast a fully-informed vote on the Proposed Transaction.

[15]    The Settlement Agreement was joined and consented to by the parties and (along with the defined terms therein) is incorporated herein by reference.

---

[1] All defined terms shall have the same meanings ascribed to them in the Settlement Agreement, unless otherwise defined herein.

[16]    On August 3, 2011, the court preliminarily certified the class, approved the Settlement Agreement and authorized the distribution of notice to all members of the class.  The court's Scheduling Order set forth procedural guidelines for disseminating notice, filing objections and appearing at the hearing on final approval of the Settlement Agreement.

[17]    Specifically, the court preliminarily certified the Action as a non-opt-out class action, pursuant to Rule 23, on behalf of a class consisting of all persons or entities who held shares of PGN common stock, either of record or beneficially, at any time from January 8, 2011, through and including the date of closing of the Proposed Transaction, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, excluding Defendants, members of the immediate family of any Defendant, and any entity in which a Defendant has or had a controlling interest, and the legal representatives, heirs, successors or assigns of any such excluded person (the "Class").

[18]    On or about August 15-16, 2011, the Notice of Pendency of Class Action and Settlement of Class Action ("Notice") was disseminated to the Class in accordance with the Scheduling Order.  The Notice was mailed to over 230,000 Class members, posted on PGN's website and published in several newspapers.

[19]    On August 23, 2011, at a special meeting held by PGN, nearly ninety-six percent (96%) of PGN shareholders voted in favor of the Proposed Transaction.

[20]     On October 20, 2011, Plaintiffs[2] filed the Motion, seeking final approval of the Settlement Agreement, including an award of attorneys' fees and expenses in the amount of $550,000.

[21]     On October 27, 2011, the Settlement Agreement was offered to the court at a hearing (the "Settlement Hearing").  Plaintiffs' attorneys offered oral argument in support of the Motion, Defendants' counsel was present, but did not oppose the Motion and no objectors appeared to be heard.

[22]     The court received a total of seven (7) objections to the Settlement Agreement, only one of which comported with the procedural requirements set forth in the Scheduling Order but all of which the court, in its discretion, has fully considered (the "Objection(s)").

[23]     The Objection by Richard Dance ("Dance") was the only Objection that complied with the Scheduling Order requirements.  Dance complains that the Settlement Agreement is not fair and reasonable because Plaintiffs filed a "frivolous action" and the "PGN stockholders should not be required to pay for the frivolity of [Plaintiffs]."[3]  Plaintiffs' Action was not frivolous when filed and this objection is overruled.

[24]     Although untimely, Martin Galaton's ("Galaton") Objection offers the most substantive attack on the Settlement Agreement, as compared to other Objections. Galaton complains that the disclosures obtained by the Settlement Agreement are inadequate and provide no material benefit to the Class, largely because the

---

[2] At the time of filing of the Motion, Plaintiff Richard Van Tassell ("Van Tassell") did not seek final approval of the Settlement.  However, at the Settlement Hearing, Lead Counsel informed the court that Van Tassell now consents to final approval of the Settlement.
[3] October 26, 2011 Notice Filing Objections, Ex. 5.

disclosures do not include free cash flow projections.[4]  Galaton contends that this information is the most valuable disclosure because it provides a company's projected value as a standalone entity, which is material to a shareholder's determination as to whether to approve a merger.[5]  Most notably, Galaton objects to the Settlement Agreement because final approval will release the claims of his class action lawsuit filed in federal court, which is related to the PGN-Duke Energy Merger.  *See, e.g., Galaton v. Johnson*, 5:11-CV-397-D (E.D.N.C. 2011).[6]

[25]  The court overrules Galaton's Objection because he offers no substantive explanation as to why it would be better for Plaintiffs to reject the Settlement Agreement and continue to litigate.  As previously mentioned, the Disclosures provided by the Settlement Agreement were material and provided sufficient information regarding the projected value of post-merger Duke Energy.  The overwhelming approval of the Merger by PGN shareholders after being provided with such Disclosures is strong evidence that the Class was satisfied with the Proposed Transaction and did not need the disclosure of free cash flow projections to determine whether the Merger was in the best interest of PGN shareholders.

[26]  The Objections filed by Jolene Jespersen, Robert Crowe, Rich Gladden, Gloria Whitaker and R. Karder appear to attack the proposed award of attorneys' fees ("Proposed Fee Award") in the Settlement Agreement.  These Objections do not

---

[4] *Id.* Ex. 6.

[5] *Id.*

[6] Galaton filed his class action complaint on July 18, 2011, well after the MOU in this Action was announced.  Galaton moved for a preliminary injunction to enjoin the PGN shareholder vote on the Proposed Transaction.  On August 16, 2011, Judge Dever denied Galaton's motion. *Galaton v. Johnson*, 5:11-CV-397-D, 2011 U.S. Dist. Lexis 92125 (E.D.N.C. Aug. 16, 2011) ("[T]he court does not believe that Galaton is likely to succeed on the merits . . . .").  As such, Judge Dever's denial of Galaton's preliminary injunction motion reflects the weakness of Galaton's claim for the disclosure of free cash flow projections.

substantively challenge the Settlement Agreement, aside from arguing that the Action was frivolously filed and the attorneys' fees are excessive and should not be paid by PGN shareholders.

[27]    As to the Proposed Fee Award:

a.      Plaintiffs' attorneys did attain some benefit for the Class by securing additional material Disclosures from Defendants.

b.      The non-monetary benefit to the Class is difficult to value.

c.      The Proposed Fee Award was negotiated in good faith after the parties agreed in principle to the proposed Settlement Agreement.

d.      PGN has agreed to pay an award of attorneys' fees and expenses up to $550,000.

e.      Plaintiffs' attorneys undertook representation in this Action on a contingency basis.

f.      Plaintiffs' attorneys entered into written retainer agreements with their clients, which authorized for the sharing and allocation of fees among Plaintiffs' attorneys based upon the work performed and in accordance with applicable law.

g.      Any attorneys' fees and expenses awarded in this Action will not be paid directly by the Class.[7]

---

[7] Some Objections complain that PGN shareholders will indirectly be forced to pay the Proposed Fee Award. These Objections, however, ignore the presumption that the PGN Board exercised sound business judgment in agreeing to settle this litigation and pay the award of attorneys' fees to prevent further defense costs that may also have been assumed, at least indirectly, by PGN shareholders. Moreover, given that PGN has approximately 294.6 million shares outstanding, an award of $550,000 would result in each PGN shareholder being indirectly responsible for less than 1/5 of one penny per share.

h. Plaintiffs' attorneys are highly respected and experienced in shareholder class action litigation.

i. The contested issues are novel and complex, and Plaintiffs' attorneys litigated under significant time constraints.

j. Plaintiffs' attorneys agreed to an up-front allocation of leadership, work and fees, which was submitted *in camera* to the court in May 2011.

k. All Plaintiffs' attorneys submitted comprehensive time records detailing work done in furtherance of the Action.

l. Plaintiffs' attorneys attest that they collectively devoted a total of 4,227 hours to this litigation since inception, which at their normal billing rates, amounts to a lodestar of $2,145,972. However, Plaintiffs' attorneys recognize – and the court agrees – that that time expended prior to the Motion for Consolidation, filed on March 22, 2011, is duplicative.

m. Plaintiffs' attorneys attest that they expended 3,088 hours to this litigation after March 22, 2011, which at their normal billing rates, amounts to a lodestar of $1,510,302.

n. The time expended after March 22, 2011, was both reasonable and customary for this type of litigation. After filing the Consolidated Complaint, Plaintiffs' attorneys conducted substantial discovery, including the service of ten (10) third-party subpoenas, review of over 160,000 pages of documents, numerous informal interviews of fact witnesses, experts and depositions of PGN's CEO and Lazard. Plaintiffs' attorneys also negotiated the Settlement

Agreement terms and drafted papers and notices disseminated to the Class and filed with the court.

o.      Plaintiffs' attorneys incurred a total of $147,728 in expenses in furtherance of this Action, primarily attributable to expert fees, travel and typical litigation costs, such as filing and deposition fees.

p.      All Plaintiffs' attorneys attest through affidavits to the accuracy of their fee reports and underlying documentation.  All Plaintiffs' attorneys also state under oath that they believe the Proposed Fee Award to be fair and reasonable.

q.      After deducting expenses, the proposed net attorneys' fees award is approximately $402,271.  Based upon the number of hours expended after March 22, 2011, Plaintiffs' attorneys seek an award that amounts to a fee of approximately $130 per hour.  Such an hourly rate is well below the typical and customary rate charged by attorneys in North Carolina for similar litigation.

r.      In determining whether the Proposed Fee Award is reasonable, the court has considered, among other things, Plaintiffs' May 2011 *in camera* submission, the instant Motion and fee affidavits and all exhibits thereto, which include a breakdown of hours and lodestar pre-and-post Motion for Consolidation, a categorization of post-consolidation hours and lodestar into compensable categories, an expense report, a client letter authorizing the allocation of fees among counsel and the affidavits of two North Carolina practitioners who are not counsel of record in the Action.

NOW THEREFORE, based on the foregoing FINDINGS of FACT, the court reaches the following CONCLUSIONS of LAW:

[28]     The court has jurisdiction over the subject matter of this Action and the parties, including all members of the Class, and the court retains jurisdiction to construe, enforce and administer the Settlement.

### Class Certification

[29]     Rule 23 governs class actions in North Carolina and provides that the court may certify a class action where the following requirements are met:

> (1) the existence of a class, (2) that the named representative will fairly and adequately represent the interests of all class members, (3) that there is no conflict of interest between the representative and class members, (4) that class members outside the jurisdiction will be adequately represented, (5) that the named party has a genuine personal interest in the outcome of the litigation, (6) that class members are so numerous that it is impractical to bring them all before the court, (7) that adequate notice of the class action is given to class members.

*Perry v. Union Camp Corp.*, 100 N.C. App. 168, 170 (1990) (citing C*row v. Citicorp Acceptance Co.*, 319 N.C. 274 (1987)).  A class exists where "the named and unnamed members each have an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members."  *Crow*, 319 N.C. at 280.

[30]     This court has previously certified non-opt-out classes in merger disputes. *See, e.g., Ehrenhaus v. Baker*, Mecklenburg County No. 08 CVS 22632 (N.C. Super. Ct. Feb. 5, 2010); *In re Quintiles Transnat'l Corp. S'holder Litig.*, Durham County No. 02 CVS 5348 (N.C. Super. Ct. Oct. 13, 2003); *In re Delhaize Am., Inc. S'holder Litig.*, Mecklenburg County No. 00 CVS 13706 (N.C. Super. Ct. Oct. 29, 2001).  These cases are consistent with the views of courts from other jurisdictions that have certified non-opt-out classes where primarily equitable relief was sought.  *See, e.g., In re*

*Philadelphia Stock Exch., Inc.*, 945 A.2d 1123, 1137 (Del. 2008); *In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir. 1989).

[31]     A non-opt-out class is appropriate here because this is not a case where the parties "seek to bind known plaintiffs concerning claims wholly or predominantly for money judgments." *Ehrenhaus v. Baker*, No. COA10-1034, 2011 N.C. App. Lexis 2161 (N.C. Ct. App. Oct. 4, 2011) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).  Instead, from the outset, Plaintiffs pled and litigated this case as one in which equitable claims predominated (to enjoin the PGN-Duke Energy Merger).

[32]     Rule 23 has been satisfied and the Action has properly been maintained according to its provisions.  Specifically, (a) a class exists in that Plaintiffs and the unnamed members of the Class each have an interest in either the same issue of law or fact, and that issue predominates over issues affecting only individual class members; (b) Plaintiffs have fairly and adequately represented and will fairly and adequately represent the interests of all members of the Class; (c) there are no conflicts of interest between Plaintiffs and members of the Class; (d) Plaintiffs have a genuine personal interest, not a mere technical interest, in the outcome of the case; (e) Class members are so numerous that it is impractical to bring them all before the court and (f) adequate notice has been given to all members of the Class, as mentioned below.

[33]     Accordingly, the Action should be certified as a non-opt-out class action, pursuant to Rule 23.

Settlement Approval

[34]     Settlement has long been preferred to litigation, and public policy prefers upholding good faith settlements, even without strong regard to the consideration

underlying the settlement. *Ehrenhaus*, 2011 N.C. App. Lexis 2161, at *24 (citing *Knight Publ'g Co. v. Chase Manhattan Bank, N.A.*, 131 N.C. App. 257, 262 (1988)).

[35]    In *Ehrenhaus*, the Court of Appeals set forth the framework for how a trial court should evaluate a class action settlement. *Id.* at *25-26. First, the trial court should conduct a preliminary approval hearing "to determine whether the proposed settlement is within the range of possible approval." *Id.* (quoting *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994)). If the trial court grants preliminary approval, "notice is sent to the class, [and] the court conducts a 'fairness' hearing, at which all interested parties are afforded an opportunity to be heard on the proposed settlement." *Id.*; *see also Frost v. Mazda Motor of Am.*, 353 N.C. 188, 197 (2000) ("[N.C.] Rule 23 does not by its terms require notice to class members, but adequate notice is dictated by 'fundamental fairness and due process.'") (quoting *Crow*, 319 N.C. at 283)). At this second hearing, the trial court must ascertain whether the proposed settlement is "fair, reasonable, and adequate." *Id.*; *Horton*, 855 F. Supp. at 827. Proponents of class action settlements bear the burden of showing that the settlement meets this standard. *Id.* (citing *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983)).

[36]    Here, preliminary approval has already been granted and Notice has been distributed. On or about August 15-16, 2011, the Notice was disseminated by mailing, publication and website posting, as provided for in the Scheduling Order and as stated in the affidavits regarding Notice, filed with the court by Defendants. The form and manner of the Notice given to the Class is determined to have been reasonable and appropriate and the best notice practicable under the circumstances, to have been

given in full compliance with the requirements of due process and Rule 23 and to constitute full and adequate notice to the Class.

[37]    As such, the remaining question before the court is whether the proposed Settlement is fair, reasonable and adequate.

[38]    Courts commonly utilize the following factors when determining the fairness, reasonableness and adequacy of a proposed class action settlement:  (a) the strength of the plaintiff's case, (b) the defendant's ability to pay, (c) the complexity and cost of further litigation, (d) the amount of opposition to the settlement, (e) class members' reaction to the proposed settlement, (f) counsel's opinion and (g) the stage of the proceedings and how much discovery has been completed.  *See Ehrenhaus*, 2011 N.C. App. Lexis 2161, at *27-29 (citing *Armstrong v. Bd. of Sch. Dir. of Milwaukee*, 616 F.2d 205, 214 (7th Cir. 1980), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)).

[39]    As such, the court has applied the foregoing factors to the present case, and Plaintiffs have met their burden of proving that the Settlement is fair, reasonable and adequate.

[40]    First, nothing in the record suggests that Plaintiffs' claims are strong enough to justify further litigation.  Lead Counsel conceded at the Settlement Hearing that after conducting discovery, he realized that the breach of fiduciary duty claims against Defendants were not strong.  By its very nature, litigation directed at attacking the business judgment of corporate directors in a merger transaction is an uncertain proposition, and the probability of success of Plaintiffs in this Action is rather minimal. This observation is corroborated by the fact that the proposed PGN-Duke Energy

Merger was approved by nearly ninety-six percent (96%) of votes entitled to be cast by PGN shareholders, which is strong evidence that the PGN Board exercised sound business judgment in negotiating the Merger.

[41]    Further, Notice of the terms of the Settlement Agreement was mailed to over 230,000 PGN shareholders, yet only seven (7) objected.  Thus, the overwhelming majority of the Class has been virtually silent as to the Settlement Agreement.

[42]    It is well settled that "the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Ehrenhaus*, 2011 N.C. App. Lexis 2161, at *28 (quoting *Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989)).  Accordingly, the nearly silent reaction of the Class here supports a finding that the Settlement is fair and reasonable.  *Id.* at *67.

[43]    Most of the Objections only take issue with the Proposed Fee Award and do not attack the substance of the Settlement Agreement.  Specifically, the Objections as a whole reflect a sentiment of disapproval with regard to awarding attorneys' fees in a class action settlement that only provided relief to the Class in the form of non-monetary Disclosures.

[44]    As previously mentioned, only the Galaton Objection complains that the Settlement in substance is inadequate, unfair or unreasonable. Based upon the above findings, none of the Objections warrant rejection of the Settlement Agreement and therefore all Objections should be overruled.  However, the sentiment of the Objections is relevant when determining whether an award of attorneys' fees should be granted.

[45]    Furthermore, the court is persuaded by the judgment of counsel who negotiated the Settlement Agreement.  In determining the fairness of a settlement, "the

opinion of experienced and informed counsel is entitled to considerable weight" provided counsel has undertaken a "detailed assessment[] of the strengths and weaknesses of the claims asserted, the applicable damages, and the likelihood of recovery." *Ehrenhaus*, 2011 N.C. App. Lexis 2161, at \*68 (quoting *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001)).

[46] The experienced lawyers in this case have concluded, and the court agrees, that the Settlement Agreement offers a reasonable compromise given the uncertain value of the remaining claims and the expense and delay that would result from further litigation.

[47] To the extent that the Class is being required to forego claims for money damages related to the alleged inadequacy of the Proposed Transaction, consistent with the evaluation of Plaintiffs' attorneys, such claims would face the substantial hurdle of overcoming the defense of North Carolina's business judgment rule.

[48] Accordingly, the Settlement is fair, reasonable and the benefits secured by virtue of the additional Disclosures are adequate to support entry of dismissal with prejudice of all claims asserted in this Action. As such, the Settlement should be APPROVED.

<u>Attorneys' Fees</u>

[49] In addition to final approval of the Settlement, Plaintiffs' attorneys also petition the court for an award of attorneys' fees in the amount of $550,000.

[50] As noted above, the Proposed Fee Award is a major point of contention, as raised by the Objections.

[51]     Plaintiffs contend that Defendants contractually agreed to pay the Proposed Fee Award as part of the Settlement Agreement, which supports a finding and conclusion that the fee is reasonable and should be awarded.  *See Ehrenhaus*, 2011 N.C. App. Lexis 2161, at *74 ("While any 'compromise' in a class action must be reviewed by a court, a court cannot modify a purely contractual settlement.").

[52]     Upon careful review of the Settlement Agreement, it appears that Defendants agreed that PGN "would pay up to $550,000" in Plaintiff attorneys' fees.[8] While the Settlement Agreement does not bind the court to award attorneys' fees to Plaintiffs' attorneys in any specific amount, the arm's-length agreement between the parties supports a finding that the Proposed Fee Award is reasonable.

[53]     Despite the contractual agreement between the parties regarding Plaintiff attorneys' fees, the relevant inquiry before the court is whether the Proposed Fee Award is reasonable under the *Ehrenhaus* analysis.  In North Carolina, the reasonableness of attorneys' fees is governed by Rule 1.5 of the Revised Rules of Professional Conduct of the North Carolina State Bar ("RPC").  *Ehrenhaus*, 2011 N.C. App. Lexis 2161, at *74-75.  RPC 1.5 provides that "[a] lawyer shall not make an agreement for, charge, or collect an illegal or clearly excessive fee or collect a clearly excessive amount for expenses."  *Id.* at *75.  The factors to be utilized when determining whether a fee is clearly excessive include the following:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the

---

[8] Settlement Agreement ¶ 15 ("[S]ubject to the terms and conditions of this [Settlement] *and* any order of the [c]ourt, PGN shall pay the attorneys' fees and expenses *awarded* by the court . . . .") (emphasis added).  Additionally, the Notice disseminated to the Class states that Plaintiffs' counsel "intend to petition the court at the Settlement Hearing for an award of attorneys fees" and "Defendants agree not to oppose the application for attorneys' fees and expenses as long as the application does not exceed in the aggregate of $550,000."  Notice 7.

> legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

*Id.* (quoting RPC 1.5(a)(1)-(8)).

[54] As to RPC 1.5(a)(1), Plaintiffs' attorneys have provided time records and affidavits, which attest that over 3,000 hours of work were expended in furtherance of this Action. The time expended is reasonable in light of the complex nature of the Action. Specifically, the Action involved the valuation of a publicly-owned utility by various investment banking methodologies and the potential impacts on valuation by a complex regulatory approval process. As such, the extensive labor expended and complexities of this Action weigh strongly in favor of granting the Proposed Fee Award.

[55] As to RPC 1.5(a)(2), Plaintiffs and their counsel understood that prosecution of this Action would necessitate considerable time and resources that otherwise could have been spent on other matters. In fact, Lead Counsel attests that this Action required the full-time attention of two (2) attorneys for approximately two (2) months. Such a finding weighs strongly in favor of granting the Proposed Fee Award.

[56] As to RPC 1.5(a)(3), the Proposed Fee Award seeks a fee that is well below the amount customarily charged in North Carolina for similar services. Specifically, Plaintiffs' attorneys are seeking a fee of approximately $402,271 for 3,088 hours of work expended after March 22, 2011, which effectively amounts to a rate of approximately $130 per hour. North Carolina attorneys involved in complex commercial

litigation typically charge much higher hourly rates for their legal services. Accordingly, the Proposed Fee Award is reasonable in light of the amount customarily charged in North Carolina for similar services.

[57]    As to RPC 1.5(a)(4), Plaintiffs' attorneys obtained a favorable result for the Class, which supports the Proposed Fee Award. As previously mentioned, Plaintiffs' attorneys secured material Disclosures, largely contained in a Form 8-K filed with the SEC, prior to the PGN shareholder vote on the Merger, which enabled PGN shareholders to cast a fully-informed vote. The Disclosures enhanced the PGN shareholders' understanding of how and why PGN entered into the Proposed Transaction with Duke Energy, while also providing additional financial data regarding the projected benefits and risks of the Merger. Accordingly, the Proposed Fee Award is reasonable in light of the results obtained by Plaintiffs' attorneys.

[58]    As to RPC 1.5(a)(5), Plaintiffs' attorneys devoted a significant amount of work under a compressed schedule, which favors an award of attorneys' fees. Plaintiffs' attorneys conducted extensive discovery over a few months, which was necessitated by the scheduled PGN shareholder vote in August 2011 on the Proposed Transaction. As a result, the circumstances of this litigation required Plaintiffs' attorneys to devote substantial labor and resources in a short time, which weighs in favor of granting the Proposed Fee Award.

[59]    As to RPC 1.5(a)(6), several Plaintiffs are large institutional entities with longstanding relationships with Plaintiffs' attorneys, which supports the Proposed Fee Award.

[60]     As to RPC 1.5(a)(7), Plaintiffs' attorneys are some of the most well-respected, elite securities class action litigators in the country.  Accordingly, the exceptional experience, reputation and ability of Plaintiffs' attorneys weighs in favor of granting the Proposed Fee Award.

[61]     As to RPC 1.5(a)(8), Plaintiffs' attorneys entered into this litigation on a contingency basis, and the contingency fee requested is reasonable under the circumstances.  To date, Plaintiffs' attorneys have forgone payment of their legal fees and expenses in furtherance of Plaintiffs' claims.  Moreover, in light of the hours expended by Plaintiffs' attorneys in this litigation, the contingency fee requested is reasonable, which weighs in favor of granting the Proposed Fee Award.

[62]     Based on the foregoing, Plaintiffs' attorneys have satisfied the requirements of North Carolina law, including but not limited to the factors set forth in RPC 1.5, which weigh heavily in favor of a finding that the Proposed Fee Award is reasonable.

NOW THEREFORE, the court, having all applicable facts, rules, law and precedent, including but not limited to those cited in the Motion, and based upon the foregoing FINDINGS of FACT and CONCLUSIONS of LAW, hereby ORDERS, ADJUDGES and DECREES that:

[1]     The Motion is GRANTED.

[2]     This Action is certified as a non-opt-out class action, pursuant to Rule 23.

[3]     Plaintiffs are certified as representatives of the Class and were adequately represented by their counsel, and the representatives and their counsel fairly and adequately protected the interests of the Class.

[4]     The form and manner of the Notice is reasonable, appropriate and most practicable under the circumstances, given in full compliance with the requirements of due process and Rule 23, and constitutes full and adequate notice to the Class.

[5]     The Settlement is fair, reasonable and adequate, and is APPROVED.

[6]     All members of the Class are bound by the Final Order and Judgment entered herein, as full and adequate notice of the proceedings was given and as a full opportunity to be heard was provided to members of the Class.

[7]     The parties to the Settlement Agreement are directed to comply with, and to consummate, the Settlement Agreement in accordance with its terms and provisions.

[8]     This Final Order and Judgment hereby DISMISSES the Action with prejudice and releases and fully and completely discharges any and all claims, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, judgments, suits, fees, expenses, and costs, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, matured or unmatured, of any nature whatsoever, whether individual, class, direct, derivative or representative, that have been, could have been, or in the future can be asserted in the Action or in any court, tribunal or proceeding (including, but not limited to, any and all claims arising under federal, state, foreign or common law, including the federal securities laws and any state disclosure law) by or on behalf of any member of the Class (whether individual, class, representative, legal, equitable or any other type or in any other capacity), against any Defendant and each of such Defendant's respective parent entities, associates, affiliates or subsidiaries, and each and all of each such Defendant's respective past, present or future officers, directors, stockholders, agents,

representatives, employees, attorneys, financial or investment advisors, advisors, consultants, accountants, investment bankers (including without limitation Lazard, Barclays, J.P. Morgan, and BAML), commercial bankers, trustees, engineers, agents, insurers, co-insurers and reinsurers, heirs, executors, trustees, general or limited partners or partnerships, limited liability companies, members, heirs, executors, personal or legal representatives, estates, administrators, predecessors, successors and assigns (collectively, "Released Persons"), which arise out of any of the allegations, facts, events, acquisitions, matters, acts, occurrences, statements, representations, misrepresentations, omissions, or any other matter, thing or cause whatsoever, or any series thereof, embraced, involved or set forth in, or referred to or otherwise related in any way to, directly or indirectly: (a) the Proposed Transaction, or any amendment thereto; (b) the adequacy of the consideration to be paid to PGN shareholders in connection with the Proposed Transaction; (c) the statutory or other legal or fiduciary obligations, if any, of Defendants or Released Persons in connection with the Proposed Transaction, or any amendment thereto; (d) the negotiations in connection with the Proposed Transaction, or any amendment thereto; (e) the processes, events and analyses leading up to the Proposed Transaction, or any amendment thereto; (f) the terms and provisions of the Merger Agreement; or (g) the disclosures or disclosure obligations of any of Defendants or Released Persons in connection with the Proposed Transaction including with respect to the Proxy (collectively, "Settled Claims"); provided, however, that the Settled Claims shall not include any claims to enforce the Stipulation and/or any claim asserted under state or federal securities laws by any person who acquires Duke Energy stock pursuant to the Proposed Transaction for any material

misrepresentations or omissions by Duke Energy pertaining to Duke Energy's financial statements, so long as such claims could not have been asserted in the Verified Consolidated Amended Class Action Complaint and do not arise out of the factual allegations set forth therein. Plaintiffs and their counsel hereby state, in this regard, that they have not investigated such claims, they are not aware of any facts that would support such claims, and they have no reason to believe that there are any such misrepresentations or omissions in Duke Energy's financial statements.

[9] Plaintiffs and all members of the Class, or any of them, together with their agents, heirs, successors in interest, transferees and assigns, hereby are barred from commencing, prosecuting, instigating or in any way participating in the commencement or prosecution of any action asserting any of the Settled Claims, either directly, representatively, derivatively, or in any other capacity, against any of the Released Persons.

[10] This Final Order and Judgment hereby fully, finally, and forever releases, relinquishes and discharges Plaintiffs, Plaintiffs' attorneys and members of the Class, from any and all claims arising out of the institution, prosecution, settlement or resolution of the Action, provided, however, that Defendants and the Released Persons retain the right to enforce the terms of the Settlement Agreement.

[11] The release and discharge included in this Final Order and Judgment shall extend to claims that Plaintiffs in the Action, for themselves and on behalf of the Class, do not know or suspect to exist at the time of the release and that, if known, might have affected the decision to enter into the release. Without in any way limiting the foregoing, Plaintiffs, and each member of the Class, shall be deemed, to the full extent permitted

by law, to waive any and all provisions, rights, and benefits conferred by any law of the United States or any state or territory of the United States or principle of common law, which governs or limits a person's release of unknown claims.

[12]     Neither the Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement shall constitute or be construed to be an admission of, or evidence of, the validity or lack of validity of the Settled Claims, or of any wrongdoing or liability of any party, or deemed to be or used as an admission of, or evidence of any fault or omission of any party in any civil, criminal or administrative proceeding in any Court, administrative agency or other tribunal.  The parties to this Settlement Agreement or any of them may file this Final Order and Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

[13]     Plaintiffs' attorneys are awarded fees and expenses in the amount of $550,000, in connection with this Action, which shall be paid, in accordance with the terms of the Settlement Agreement, by PGN (or its successor(s) in interest), to Pomerantz Haudek Grossman & Gross LLP, as receiving agent for Plaintiffs' attorneys, within ten (10) business days from the entry of this Order.

[14]     If, for any reason, the Settlement is terminated, overturned, or materially modified on appeal or as a result of further proceedings on remand, or otherwise does not become effective, unless the parties shall agree otherwise, the parties shall revert to

their litigation positions immediately prior to the execution of the Settlement and this Final Order and Judgment shall become null and void.

This the 29th day of November, 2011.