Nakatsukasa v. Furiex Pharms., Inc., 2015 NCBC 68.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 6156

WALTER NAKATSUKASA, Individually and
on Behalf of All Others Similarly Situated,
                Plaintiff

            v.

FURIEX PHARMACEUTICALS, INC., JUNE
S. ALMENOFF, PETER B. CORR,
STEPHEN R. DAVIS, WENDY L. DIXON,
FREDRIC N. ESHELMAN, STEPHEN W.
KALDOR, ROYAL EMPRESS, INC. and
FOREST LABORATORIES, INC.,
                Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 6955

CHRISTOPHER SHINNEMAN, Individually
and on Behalf of All Others Similarly
Situated,
                Plaintiff

            v.

FURIEX PHARMACEUTICALS, INC.,
FREDRIC N. ESHELMAN, JUNE S.
ALMENOFF, PETER B. CORR, WENDY L.
DIXON, STEPHEN W. KALDOR, STEPHEN
R. DAVIS, ROYAL EMPRESS, INC. and
FOREST LABORATORIES, INC.,
                Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER FINALLY APPROVING SETTLEMENT AND AWARDING ATTORNEYS' FEES

THIS MATTER comes before the Court on Plaintiffs' Motion for Final Approval of
Settlement ("Approval Motion") and Motion for Award of Attorneys' Fees and Expenses ("Fee
Motion," together with Approval Motion, "Motions"). Both Motions are unopposed by
Defendants, and the Court, after appropriate notice to potential class members was provided

as required by the Court's Order Preliminarily Approving Settlement, received no objection to the settlement conditionally entered on or about January 15, 2015 ("Settlement"). On June 2, 2015, the Court held a hearing on the Motions and is satisfied as to the fairness, reasonableness, and adequacy of the Settlement, and the fairness and reasonableness of the fees, costs, and incentives provided herein. Therefore, the Court GRANTS the Approval Motion, CERTIFIES the class as defined below for settlement purposes only, APPROVES the Settlement, and GRANTS, in part, the Fee Motion for the reasons below.

> *Rabon Law Firm, PLLC, by Gary W. Jackson, Esq., and Brodsky & Smith, LLC by Evan J. Smith, Esq. for Plaintiffs.*

> *Wyrick Robbins Yates & Ponton, LLP by Lee M. Whitman, Esq. for Defendants Furiex Pharmaceuticals, Inc., June S. Almenoff, Peter B. Corr, Stephen R. Davis, Wendy L. Dixon, Fredric N. Eshelman, Stephen W. Kaldor.*

> *Robinson, Bradshaw & Hinson, P.A. by Adam K. Doerr, Esq., David C. Wright, III, Esq., and Robert W. Fuller, Esq., and Covington & Burling LLP by Mark P. Gimbel, Esq. and Christopher Y.L. Yeung, Esq. for Defendants Forest Laboratories, Inc. and Royal Empress, Inc.*

McGuire, Judge.

### Background

1. Plaintiffs in these actions, Walter Nakatsukasa and Christopher Shinneman, are former shareholders of Furiex Pharmaceuticals, Inc. ("Furiex").

2. On April 28, 2014, Furiex announced that it had entered into an Agreement and Plan of Merger ("Merger Agreement") with Forest Laboratories, Inc. ("Forest") and Royal Empress, Inc. Pursuant to the terms of the Merger Agreement, Furiex shareholders would have the right to receive $95.00 per share plus a Contingent Value Right of up to $30 per share in exchange for their Furiex shares.

3. Following the announcement of the Merger, four putative class-action lawsuits challenging the Merger were filed, all of which the parties agree arise from the same set of operative facts and involve the same putative class: *Kollman v. Furiex Pharmaceuticals, Inc.*

*et al.*, Case No. 9599, and *Powell v. Furiex Pharmaceuticals, Inc. et al.*, Case No. 9603, filed on May 1 and 2, 2014, respectively, in the Court of Chancery of the State of Delaware (together, the "Delaware Actions"); the Nakatsukasa Action, filed on May 12, 2014; and the Shinneman Action, filed on May 28, 2014 (together, the "North Carolina Actions" and together with the Delaware Actions, the "Actions").

4.    On June 4, 2014, Furiex filed its Definitive Proxy Statement on Schedule 14A ("Proxy") with the Securities and Exchange Commission ("SEC"). On the same date, Plaintiffs in all four actions filed substantively identical amended complaints. The amended complaints alleged, among other disclosure issues, that the Proxy failed to disclose whether confidentiality agreements entered into between Furiex and potential buyers contained standstill or "don't ask, don't waive" provisions ("DADW provisions").

5.    On June 11, 2014, the parties to the North Carolina actions agreed to an expedited discovery schedule which included an agreement to stay all further proceedings in the Delaware Actions. After reviewing documents produced during this expedited discovery, Plaintiffs' concluded that five confidentiality agreements entered into between Furiex and potential buyers contained DADW provisions. Additionally, Plaintiffs determined that the Proxy failed to provide Furiex shareholders with "material information concerning, among other things, the process which resulted in the [m]erger, Furiex's financial projections, and the financial analyses by [Bank of America Merrill Lynch ("BAML")] and Credit Suisse Securities (USA) LLC [("Credit Suisse")] underlying each advisor's fairness opinion."[1]

6.    As part of the resolution of this matter, Furiex notified the parties to the five DADW provisions that it would waive those provisions. Having resolved the DADW issue, Plaintiffs' counsel engaged in vigorous, arm's-length negotiations which ultimately resulted

---

[1] Pls.' Mem. Supp. Mot. Prelim. Approval of Settlement 3-4.

in the execution of a Memorandum of Understanding on June 23, 2014. In addition to waiving the DADW provisions, the negotiated settlement provided Furiex shareholders with supplemental disclosures that Plaintiffs believed resolved their remaining claims. On June 23, 2014, Furiex filed these supplemental disclosures on Schedule 14A with the SEC.

7. On July 1, 2014, Furiex stockholders voted to approve the Merger. Approximately 79.86% of Furiex's outstanding common stock was voted at the meeting, of which a majority voted in favor of the Merger.

8. On January 15, 2015, the parties executed a Stipulation and Agreement of Compromise, Settlement, and Release ("Stipulation"), and on February 9, 2015, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Settlement, Certification of Settlement Class, Approval of Class Notice and Final Approval Hearing Scheduling. On March 23, 2015, the Court entered its Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), and noticed a hearing for approval of the final settlement for June 3, 2015. The parties subsequently provided written notice to class members advising them, *inter alia*, of their rights to object to the proposed settlement. Neither the Court nor the parties received any objection to the Settlement, either before, during, or after the June 3 hearing.

9. On May 22, 2015, Plaintiff filed the Motions, along with supporting affidavits and other materials. On June 3, 2015 the Court held a hearing on the motions for final approval and for attorneys' fees.

Class Certification

10. Rule 23 of the North Carolina Rules of Civil Procedure ("Rule(s)") governs class actions. Under that rule, the trial court has broad discretion in determining whether to certify a case as a class action. *Harrison v. Wal-Mart Stores, Inc.*, 170 N.C. App. 545, 547 (2005). The Court, in its discretion, may certify a class action if certain requirements are satisfied.

First, parties seeking to employ the class action procedure pursuant to our Rule 23 must establish the existence of a class. A class exists when each of the members has an interest in either the same issue of law or of fact, and that issue predominates over issues affecting only individual class members. The party seeking to bring a class action also bears the burden of demonstrating the existence of other prerequisites: (1) the named representatives must establish that they will fairly and adequately represent the interests of all members of the class; (2) there must be no conflict of interest between the named representatives and members of the class; (3) the named representatives must have a genuine personal interest, not a mere technical interest, in the outcome of the case; (4) class representatives within this jurisdiction will adequately represent members outside the state; (5) class members are so numerous that it is impractical to bring them all before the court; and (6) adequate notice must be given to all members of the class.

*Beroth Oil Co. v. N.C. Dep't of Transp.*, 367 N.C. 333, 336 (2014) (citations omitted). "When all the prerequisites are met, it is left to the trial court's discretion whether a class action is superior to other available methods for the adjudication of the controversy." *Id.*

11.     Here, the class representatives' claims are typical of claims of the putative class, are common to all Furiex shareholders in the defined time period,[2] and predominate over any potential individual claim that might be asserted by the class representatives. The common questions of fact involved in this matter included whether Defendants failed to provide all Furiex shareholders with material information necessary for them to make an informed vote on the merger. Those factual issues give rise to the same legal issues; to wit, whether the Furiex Board breached any fiduciary duties and whether the shareholders are entitled to any relief. Because these issues predominate over any individual issue or interest of the class representatives, a class exists.

---

[2] The class definition, as defined in the Preliminary Approval Order, includes "any and all record and beneficial owners of Furiex common stock during the period beginning April 28, 2014, through the date of the consummation of the Merger, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, excluding Defendants, members of the immediate family of any Defendant, any entity in which a Defendant has or had a controlling interest, and the legal representatives, heirs, successors or assigns of any such excluded person." ("Class," composed of "Class Members").

12.     Additionally, the Court concludes that the class representatives have no conflict of interest with the class, and that they, as former shareholders, have a genuine personal interest in the outcome of the case and that interest is shared by all class members. Accordingly, Plaintiffs fairly and adequately represent the interests of all members of the class.

13.     The class here consists of more than three thousand shareholders who, collectively as of March 17, 2014, own over ten million shares of Furiex common stock. Clearly, the class is so numerous that it is impractical to bring all members before the Court. *See Pitts v. Am. Sec. Ins. Co.*, 144 N.C. App. 1, 18 (2001) (finding that numerosity requirement had been satisfied where the class appeared, based on the plaintiff's good faith estimate, to include in excess of one thousand persons).

14.     Because Plaintiffs have satisfied all class action prerequisites, this Court has the discretion to determine whether a class action is superior to other methods for adjudication of this controversy. *Beroth Oil Co.*, 367 N.C. at 336. After thoroughly reviewing the Approval Motion, the affidavits and evidence provided in support of the Approval Motion, and other appropriate matters or record, the Court concludes, in its discretion, that class certification is proper in this matter. Plaintiffs additionally ask the Court to certify this class as a non-opt-out class, one in which the class members lack the ability to exclude themselves from class and, thus, the preclusive effect of any class settlement. *See Ehrenhaus v. Baker*, 216 N.C. App. 59, 78 (2011). As the North Carolina Court of Appeals has recognized, a class may be certified without opt-out rights when the primary relief sought is not monetary, but injunctive or declaratory. *Id.* at 79. Here, Plaintiffs primarily seek, and the Settlement primarily provides, for the waiver of the DADW agreements and additional disclosures to shareholders of information related to the merger between Furiex and Forest. Accordingly, the Court concludes that a non-opt-out class is both permitted under North Carolina Rule 23

and is appropriate in these Actions. *See Ehrenhaus*, 216 N.C. App. at 81 (finding that non-opt-out class was appropriate where the "predominant claim [in the action] was Ehrenhaus's attempt to enjoin the [m]erger").

15. Accordingly, the Court certifies the following non-opt-out Class solely for the purpose of effectuating the Settlement:

> any and all record and beneficial owners of Furiex common stock during the period beginning on April 28, 2014 through the date of the consummation of the Merger, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, excluding Defendants, members of the immediate family of any Defendant, any entity in which a Defendant has or had a controlling interest, and the legal representatives, heirs, successors or assigns of any such excluded person.

### The Settlement

16. The Court now turns to the Settlement itself to determine whether the Settlement is "fair, reasonable, and adequate." *Ehrenhaus*, 216 N.C. App. at 73 (internal citations omitted). The burden of showing that the Settlement satisfies this standard rests on Plaintiffs. *Id.* The determination of whether Plaintiffs have satisfied this burden rests in the trial court's sound discretion. *Id.*

17. Although the Court may consider a variety of factors in evaluating the settlement, the court of appeals has identified two key factors in determining whether to approve a proposed settlement of a class action lawsuit. "The first is the likelihood the class will prevail should litigation go forward and the potential spoils of victory, balanced against benefits to the class offered in the settlement." *Ehrenhaus*, 216 N.C. App. at 74. "The second is the class's reaction to the settlement." *Id.*

18. As to the first factor, the Court recognizes that the expedited nature of the relief sought in Plaintiffs' Amended Complaints and the expedited discovery schedule obtained in these actions resulted in the execution of the Memorandum of Understanding

just nineteen days after the Amended Complaints were filed. Within this short period of time, however, Plaintiffs' counsel were able to obtain and review discovery of public and non-public information, and succeeded in obtaining the DADW waivers and additional material disclosures beneficial to shareholders.

19.     A number of courts have recognized that obtaining waivers or revisions of deal protection agreements, such as a waiver of DADW provisions, provides the opportunity for a topping bid and, in turn, for stockholders to receive greater value. *See In re Compellent Techs., Inc.*, 2011 Del. Ch. LEXIS 190 at *54 (Del. Ch. Dec. 9, 2011); *In re Del Monte Foods Co. S'holder Litig.*, 2011 Del. Ch. LEXIS 94 at *44-45 (Del. Ch. Jun. 27, 2011). This opportunity "to obtain the highest possible price for shareholders" is precisely the relief sought by Plaintiffs.[3]

20.     Plaintiffs obtained significant additional disclosures concerning the merger with Forest, including additional detailed information about the financial analyses performed by BAML and Credit Suisse upon which those banks based their opinions that the transaction was fair. Again, courts have acknowledged the value of such information to shareholders considering a proposed sale.

> [W]hen a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Only providing some of that information is insufficient to fulfill the duty of providing a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of the board as to how to vote . . . rely.

*In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203-204 (Del. Ch. 2007) (quotation and footnote omitted); *see also In re Pure Resources, Inc. Stockholders Litigation*, 808 A.2d 421, 449 (Del. Ch. 2002) ("The real informative value of the banker's work is not in its bottom-

---

[3] Am. Compl. (14 CVS 6156), prayer for relief ¶ B.

line conclusion, but in the valuation analysis that buttress that result."). The disclosures also clearly were material. *BioClinica, Inc. S'holder Litig.*, Consol. C.A. No. 8272-VCG, 2013 Del. Ch. LEXIS 52, at *18 (Del. Ch. Feb. 25, 2013) ("Generally, the failure of a company to disclose management's financial projections in its proxy materials, when those projections have been relied on by a financial advisor to render a fairness opinion, is a material omission that will sustain injunctive relief if not corrected.").

21. In addition, Defendants "were adamant that they would not address the disclosures absent a settlement or Court order."[4] Accordingly, to obtain the supplemental disclosures, Plaintiffs were forced to decide whether to obtain the Settlement or pursue litigation to obtain the same information. Given the deference afforded to directors of corporations under the business judgment rule, Plaintiffs chose the former approach.[5]

22. The value of the DADW waivers and supplemental disclosures perhaps explains the lack of any objection by class members to the Settlement. The lack of any objection from the class is a strong indication of the Settlement's reasonableness and should be afforded significant weight in the Court's consideration of the Approval Motion. *See Ehrenhaus*, 216 N.C. App. at 74 ("[T]he reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." (alteration in original) (quoting *Sala v. Nat'l R.R. Passenger Corp.*, 721 F.Supp. 80, 83 (E.D. Pa. 1989)).

23. Ultimately, after thorough consideration of the nature and strength of Plaintiffs' claims, the potential defenses they faced, the urgency with which the action was initiated and the short time in which the primary issues were resolved, and the lack of any objection to the Settlement, the Court concludes, in its discretion, that the Settlement is fair and reasonable and should be approved.

---

[4] Pls.' Mem. Supp. Mot. Final Approval of Settlement 20.
[5] Id.

<u>Attorneys' Fees</u>[6]

24.     Plaintiffs also move the Court to approve their request for an award of $695,000 in attorneys' fees and costs.  The Settlement Agreement provides that Plaintiffs' have "reserve[d] the right to make a petition for an award of attorneys' fees and expenses to the Court . . . in an amount not to exceed six hundred ninety five thousand dollars ($695,000 USD)."[7]  The request is comprised of $660,431.31 in attorneys' fees, and $34,568.69 in costs.  The attorneys' fees include a $2,000 incentive award for each of the two North Carolina class representatives.[8]  The Fee Motion is not opposed by Defendants.  The settlement of this action is not contingent on the award of attorneys' fees to Plaintiffs' counsel, and the Plaintiffs and class members are not being asked to pay any of the fees and costs.  Each of Plaintiffs' counsel have submitted affidavits attesting to the hours expended, billing rates, and any costs incurred by their respective law firms.  Plaintiffs' Counsel, however, have not submitted detailed billing records regarding specific tasks and hour expended for each task. Rather, they have provided totals of hours expended by various attorneys' who have worked on the case grouped into broad categories such as "pleadings and motions," "legal and other research," and "other court appearances and preparation." Plaintiffs' out-of-state counsel also

---

[6] Plaintiff does not point to any statutory authority for an award of attorneys' fees in this case, and North Carolina's appellate courts have not recognized an award of fees based on the "common benefit" doctrine. *In re Wachovia Shareholder Litig.*, 168 N.C. App. 135 (2005).  Plaintiffs appear to base the request for fees solely upon the contractual agreement contained in the Settlement Agreement. Generally, in North Carolina attorneys' fees may not be recovered either as costs or damages absent statutory authority. *G.E. Betz, Inc. v. R.C. Conrad*, __ N.C. App. __, __, 752 S.E.2d 634, 654 (2013) ("Generally, a successful litigant may not recover attorneys' fees unless such recovery is expressly authorized by statute."); *Stillwell Enterprises v. Interstate Equipment*, 300 N.C. 286, 289 (1980). Nevertheless, the Court recognizes that such fee agreements arising from settlements of class actions have been enforced by this court, and the Court will presume that it has authority to enforce the agreement for an award of attorneys' fees in this case. *See In re Harris Teeter Merger Litigation*, 2014 NCBC LEXIS 47, at **19-22 (2014, Gale, J.)

[7] Stipulation of Settlement ¶ 18.

[8]  Mem. Supp. Mot. Attorneys' Fees 2, 4.

have provided information regarding each firm's experience and expertise in this type of litigation.

25.     While a court may not modify a contractual attorneys' fees arrangement reached in a settlement of a Rule 23 class action, it nevertheless must review the fees sought for reasonableness and must approve any fees paid by way of settlement. *See Ehrenhaus*, 216 N.C. App. at 74 ("While any 'compromise' in a class action must be reviewed by a court, a court cannot modify a purely contractual settlement."). Here, the parties agreed that Plaintiffs could apply to the Court for an award of attorneys' fees and costs of *up to* $695,000. The determination of the amount of attorneys' fees to be awarded is in the sound discretion of the Court. *G.E. Betz, Inc. v. Conrad*, __ N.C. App. __, __, 752 S.E.2d 634, 654 (2013). Accordingly, the issue before the Court is whether Plaintiffs' request for the full $695,000 is reasonable.

26.     Plaintiffs have submitted affidavits establishing that Plaintiffs' attorneys expended 701.3 hours pursuing this action, which would have generated attorneys' fees of $388,465.00 at the respective attorneys' "normal" billing rates (the "lodestar" amount).[9] They seek $660,431.31 in attorneys' fees based upon a "1.70 multiplier" of the lodestar amount, based primarily on their contention that similar multipliers have been applied by courts in other jurisdictions.[10] Plaintiffs have not cited to any North Carolina appellate decision approving use of a multiplier, but contend that it is proper in this case.

27.     In recent years, the North Carolina Court of Appeals has identified two similar, but not identical, sets of criteria to be considered in determining the reasonableness of requested attorneys' fees. In *G.E. Betz*, the Court of Appeals cited with approval the factors enunciated in *United Laboratories, Inc. v. Kuykendall*, including:

---

[9] Mem. Supp. Mot. Attorneys' Fees 4.
[10] *Id.* at 4, n. 7.

the time and labor expended, the skill required, the customary fee for like work, [] the experience or ability of the attorney . . . the novelty and difficulty of the questions of law[,] the adequacy of the representation[,] the difficulty of the problems faced by the attorney[,] especially any unusual difficulties[,] and the kind of case for which fees are sought and the result obtained.

*G.E. Betz*, __ N.C. App. at __, 752 S.E.2d at 655 (quoting *United Labs., Inc. v. Kuykendall*, 335 N.C. 183, 195 (1993)).

28. In *Ehrenhaus,* the court of appeals held that the reasonableness of attorneys' fees is governed by Rule 1.5 of the Revised Rules of Professional Conduct of the North Carolina State Bar ("RPC"). 216 N.C. App. at 96. RPC 1.5 provides that "[a] lawyer shall not make an agreement for, charge, or collect an illegal or clearly excessive fee or collect a clearly excessive amount for expenses." *Id.* at 96. The factors to be utilized when determining whether a fee is clearly excessive include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

*Id.* at 96-97 (quoting RPC 1.5(a)(1)-(8)).

29. The Court concludes that the attorneys' fees requested in this case should be assessed against the *Ehrenhaus* factors, which include all or almost all of the factors endorsed by the Court in *G.E. Betz*.

30. The Fee Motion is unopposed, and Plaintiffs have provided sufficient information and evidence to establish the reasonableness of their fee request under several of the RPC 1.5 factors. Plaintiffs' counsel has provided sufficient evidence of the time and labor required to litigate the case. Plaintiffs' counsel also has established that they obtained a highly favorable result for Plaintiffs and the class by requiring Defendants to waive the

DADW agreements and provide further disclosures favorable to Furiex shareholders. Additionally, the time limitations imposed by the need to obtain the waiver and disclosures in the face of an imminent shareholder vote were substantial. Finally, the unopposed information provided by Plaintiffs' counsel establish the experience, skill, and ability of Plaintiffs' counsel.

31. The remaining factors raise more difficult issues. It seems clear, and Plaintiffs do not claim otherwise, that this was the first and only matter in which Plaintiffs' counsel has represented the named Plaintiffs. Accordingly, the "nature and length of the professional relationship" does not weigh in favor of the fees being requested in this action.

32. Similarly, while Plaintiffs' contend that "Plaintiffs and their counsel understood that prosecution of this Action would and did necessitate considerable time and resources that otherwise could have been spent on other matters,"[11] they have not provided any specific evidence or examples of matters that counsel were unable to accept because of work on this case. Counsel represent that they spent substantial time in litigating the case and reaching the settlement, but the large number of firms engaged in performing the work strongly suggests to the Court that this case would not have "preclude[d] other employment by the lawyer[s]" involved. Accordingly, this factor must be weighed, at best, neutrally in determining the reasonableness of the fee request.

33. The Court is most concerned with the issues of "the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly" and "the fee customarily charged in the locality for similar legal services". Plaintiffs merely contend that "the Action involved questions regarding the mechanics of deal protection provisions, relative valuation analyses developed by skilled and well-known financial advisors, and

[11] Mem. Supp. Mot. Attorneys' Fees 8.

issues of North Carolina law pertaining to direct and derivative claims."[12] While Plaintiffs' out-of-state counsel have established that they are skilled practitioners in the area of shareholder litigation arising from mergers and acquisitions, they have not provided any explanation of why such skills could not be obtained in North Carolina.

34.    In assessing an award of attorneys' fees in North Carolina the "rates in the geographic area of the litigation are relevant to the reasonableness determination." *G.E. Betz, Inc.*, __ N.C. App. at __, 752 S.E.2d at 655 (citations omitted). Nevertheless, "although community rates may be the starting point, the trial court must conduct further inquiry when local counsel do not have the expertise to adequately represent a client." *Id.* Where an hourly rate far in excess of local rates is to be awarded, the court must make findings demonstrating why the fees are "reasonable." *Id.*, __ N.C. App. at __, 752 S.E.2d at 657 (vacating and remanding trial court's order awarding fees "double those billed in the community where the litigation took place" because trial court failed to conduct any inquiry as to whether that work could have been performed "by local counsel at reasonable rates within the community").

35.    Here, Plaintiffs seek $660,431.31 in attorneys' fees for 701.3 hours of professional time expended. This works out to an effective hourly rate of $941.72.[13] *See In re Sauer- Danfross Inc. Shareholder Litig.*, 65 A.3d 1116, 1139 (Del. Ch. Apr. 29, 2011) ("Traditionally, we have used hours worked to calculate an effective hourly rate that can be examined to guard against windfall compensation when awarding large fees.") Plaintiffs contend that the Court should apply a "multiplier" of 1.7 to bridge the difference between the $388,465 lodestar amount and the $660,431.31 in fees they seek. As noted above, Plaintiffs have not cited to, and this Court is unable to find, any reported case in which a North

---

[12] *Id.* at 7.
[13] None of Plaintiffs out-of-state attorneys charged a rate this high, but did charge attorneys' time at rates ranging from $275 – $800 per hour.

Carolina court has applied a "multiplier" to increase the lodestar amount. Accordingly, the Court believes the best course is to assess the requested fees as if Plaintiffs were seeking an award of $941.72 per hour, and to consider such request based on whether special legal skills and experience were involved that are not available in North Carolina, the rates charged by attorneys for comparable work in the local area, and in light of the result obtained for the amount of work expended.

36. Here, the record is devoid of any evidence regarding the availability of local attorneys' with the necessary skills and experience to pursue this type of shareholder litigation. Nevertheless, at the hearing, Plaintiffs' local counsel represented to the Court that he did not believe there were a substantial number of attorneys in North Carolina prosecuting this type of shareholder action. Accordingly, despite the lack of specific information and evidence about whether there exists North Carolina counsel qualified to pursue such litigation, the Court finds that this factor weighs in favor of awarding a premium rate.

37. With regard to the rates generally charged for sophisticated business litigation in North Carolina, this Court has recognized as recently as 2014 that an hourly rate of $321.91 per hour was "reasonable" in North Carolina for business litigation. *In re Harris Teeter*, 2014 NCBC 44, ¶ 63 (N.C. Super. Ct. Sep. 24, 2014). The undersigned's own experience is that rates of approximately $300 – $550 per hour are typical of the fees charged for this type of work in Wake County, North Carolina. Here, Plaintiffs' requested fees would compensate Plaintiffs' counsel at a rate of almost $950 per hour. The Court concludes that the rates charged in the local geographic area for like work weighs against Plaintiffs' fees request.

38. As noted above, Plaintiffs' counsel obtained a very good result for the class. Securing the waiver of the DADW provisions and the additional disclosures conferred a

significant benefit on Furiex's shareholders by providing both the opportunity for a higher bid from another entity and important information that shareholders could use in determining whether to approve the merger. This factor weighs in favor of the requested fee award.

39. On the other hand, the amount and type of work performed is, at best, a neutral factor. Plaintiff's counsel expended just 701.30 hours to obtain the settlement. Plaintiffs only took only two depositions during the litigation.[14] Plaintiffs' counsel reviewed only approximately 1000 pages of non-public documents.[15] Plaintiffs cite the attorneys' fees awards in *In re Harris Teeter* and *In re Progress Energy Shareholder Litigation*, as examples of cases in which the Court has awarded "reasonable attorneys' fees and expenses in resolution of a class action."[16] In *Harris Teeter*, the plaintiffs' counsel secured additional disclosures from Harris Teeter in connection with its proposed merger. *In re Harris Teeter*, 2014 NCBC 44, ¶¶ 46-48. In that case, the plaintiffs' counsel reviewed 92,000 pages of documents, among other work, and sought $295,260.71 in fees for 917.20 hours of work performed. *Id.* at ¶ 63. The Court noted that this equated to an hourly fee of $321.91, which the Court held to be reasonable in light of rates typically charged in North Carolina. *Id.*

40. In *Progress Energy*, the plaintiffs also secured additional disclosures in connection with Progress' merger with Duke Energy Corporation. *In re Progress Energy Shareholder Litigation*, 2011 NCBC 44, ¶ 14 (N.C. Super. Ct. Nov. 29, 2011). In the settlement agreement, the parties agreed that Progress would pay attorneys' fees and expenses of "up to $550,000." *Id.* at ¶ 20. Plaintiffs' counsel actually expended 3,088 hours on the litigation and had lodestar fees of $1,510, 302, but sought attorneys' fees of only $402,271.

---

[14] Mem. Supp. Mot. Attorneys' Fees 7.
[15] *Id.* at 3.
[16] *Id.* at 2-3.

*Id.* at ¶ 27. The plaintiffs' counsel reviewed 160,000 pages of documents, took depositions, and issued 10 third-party subpoenas. *Id.* The Court determined that the request amounted to a fee of $130 per hour which was "well below the typical and customary rate charged by attorneys' in North Carolina for similar litigation." *Id.* at ¶ 56.

41. The awards in *Harris Teeter* and *Progress Energy* demonstrate the extraordinary amount of attorneys' fees Plaintiffs seek in this matter. The $941.72 per hour effective rate that Plaintiffs' request is almost three times the fee approved in *Harris Teeter*, and seven times the hourly rate approved in *Progress Energy*. Granted, Plaintiffs' counsel did secure the waiver of the DADW provisions, a significant benefit to shareholders that was not present in *Harris Teeter* and *Progress Energy*. That additional benefit, however, does not justify the substantially greater effective hourly rate Plaintiffs' request in this case.

42. Here, even if the Court applies the high end of the North Carolina rates it believes are charged for similar work, or $550 per hour, the lodestar amount would be $385,715, or almost exactly the actual lodestar as established by Plaintiffs' own billing records. Nevertheless, the Court recognizes that the parties have contractual agreement, and the requested fees fall within the amount that Defendants agreed they would be willing to pay. Plaintiffs' counsel also obtained waiver of DADW provisions, a significant benefit to the class that was not present in *Harris Teeter* or *Progress Energy*. Finally, the information before the Court supports the conclusion that Plaintiffs' out-of-state counsel provided legal expertise that may not be readily available in North Carolina. Accordingly, the Court will exercise its discretion to award Plaintiffs' counsel attorneys' fees of $504,000, which includes the $2,000 incentive payments to the two North Carolina representatives.

43. Plaintiffs' requested costs of $34,568.69 are reasonable under the circumstances, and the Court in its discretion awards the full amount of the costs.

44.     Accordingly, the Court concludes that Plaintiffs should be awarded $538,568.69 in attorneys' fees and costs.

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, and DECREED, THIS 1st DAY OF July, 2015, AS FOLLOWS:

45.     Unless otherwise defined herein, all defined terms shall have the meanings as set forth in the Stipulation.

46.     The Notice of Pendency of Class Action, Proposed Settlement of Class Action, Settlement Hearing and Right to Appear (the "Notice") has been given to the Class pursuant to and in the manner directed by the Scheduling Order, proof of the mailing of the Notice has been filed with the Court and full opportunity to be heard has been offered to all parties to the Actions, the Class and persons in interest. The form and manner of the Notice is hereby determined to have been the best notice practicable under the circumstances and to have been given in full compliance with each of the requirements of North Carolina Rule of Civil Procedure 23, due process and applicable law, and it is further determined that all members of the Class are bound by the Order and Final Judgment herein.

47.     Based on the record of the Actions, the Court expressly and conclusively finds, pursuant to North Carolina Rule of Civil Procedure 23, as follows:

a.  that (i) the Class, as defined below, is so numerous that separate joinder of all members is impracticable, (ii) there are questions of law and fact common to the Class, (iii) the claims of Plaintiff are typical of the claims of the Class, and (iv) Plaintiff and his counsel have fairly and adequately protected the interests of the Class; and

b.  that the requirements of North Carolina Rule of Civil Procedure 23 have been satisfied;

48. The Actions are finally certified as a class action, pursuant to North Carolina Rule of Civil Procedure 23, on behalf of a mandatory, non-opt-out class consisting of any and all record and beneficial owners of Furiex common stock during the period beginning on April 28, 2014 through the date of the consummation of the Merger, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them (the "Class," to be composed of "Class Members").

49. Pursuant to North Carolina Rule of Civil Procedure 23, Plaintiffs Walter Nakatsukasa and Christopher Shinneman are finally certified as the Class Representatives. Brodsky & Smith, LLC and Ryan & Maniskas, LLP is finally certified as Class Counsel.

50. The Stipulation and the terms of the Settlement as described in the Stipulation and the Notice are found to be fair, reasonable, adequate, and in the best interests of the Class, and are hereby approved pursuant to North Carolina Rule of Civil Procedure 23. The Parties are hereby authorized and directed to comply with and to consummate the Settlement in accordance with the terms and provisions set forth in the Stipulation, and the Clerk of Court is directed to enter and docket this Order and Final Judgment in the Actions.

51. This Order and Final Judgment shall not constitute any evidence or admission by any Party herein of any wrongdoing with respect to any claims asserted in the Actions and should not be deemed to create any inference that there is any liability therefor.

52. The Actions are hereby DISMISSED WITH PREJUDICE on the merits and, except as provided herein, without fees or costs.

53. Plaintiffs in the Delaware Actions shall move or otherwise apply for the dismissal, with prejudice and without fees or costs except as provided herein, of the Delaware Actions within five (5) business days.

54. The Plaintiffs and each and every member of the Class shall be deemed to have, and by operation of this Order and Final Judgment shall have, completely, fully, finally and forever discharged, released, settled, and dismissed with prejudice on the merits any and all manner of claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters and issues known and unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, including, without limitation, unknown claims that could have been, or in the future can or might be asserted in any court, tribunal or proceeding, against Defendants, BAML, Credit Suisse, and their respective predecessors, successors in interest, parents (including, without limitation, Forest Laboratories, LLC and Actavis Plc and its subsidiaries), subsidiaries, affiliates, representatives, attorneys (including Defendants' Counsel), agents, trustees, executors, heirs, spouses, marital communities, assigns or transferees and any person or entity acting for or on behalf of any of them and each of them, and each of their predecessors, successors in interest, parents, subsidiaries, affiliates, representatives, attorneys, agents, trustees, executors, heirs, spouses, marital communities, assigns or transferees and any person or entity acting for or on behalf of any of them and each of them (including, without limitation, any investment bankers, accountants, insurers, reinsurers or attorneys of the foregoing and any past, present or future officers, directors and employees of any of them) (individually a "Released Party," and collectively, the "Released Parties"), by Plaintiffs or any member of the Class in their capacity as stockholders, related to the Merger, in any forum, including, without limitation, class, derivative, individual, or other claims, whether state, federal, or foreign, common law, statutory, or regulatory, including, without limitation, claims under the federal securities laws or state disclosure laws, arising out of, related to, or concerning (i) the allegations contained in the Actions, (ii)

the Merger or any amendment thereto, including, without limitation, the adequacy of the consideration to be paid to Furiex shareholders in connection with the Merger, (iii) any agreements, and disclosures relating to the Merger, and any compensation or other payments made to any of the Defendants in connection with the Merger, (iv) the Supplemental Disclosures, any amendments thereto or any other disclosures relating to the Merger, or any purported failure to disclose, with or without scienter, material facts to stockholders in connection with the Merger, (v) the statutory or other legal or fiduciary obligations, if any, of the Defendants or any Released Party in connection with the Merger, or (vi) any purported aiding and abetting of any alleged breach of duty, law or other obligation relating to the foregoing (collectively, the "Settled Claims"); provided, however, that the Settled Claims shall not include the right of the Plaintiffs or any members of the Class to enforce in the Court the terms of the Stipulation or the Settlement or any claims for appraisal, if any, pursuant to 8 Del. C. § 262.

55.     Defendants and Released Parties shall be deemed to have, and by operation of this Order and Final Judgment approving the Settlement shall have, completely, fully, finally and forever released Plaintiffs and their counsel from all claims or sanctions, known or unknown, accrued or unaccrued, arising out of or in any way related to the instituting, prosecution, settlement or resolution of the Actions, provided however, that the Defendants and Released Parties shall retain the right to enforce in the Court the terms of the Stipulation and the Settlement and to oppose or defend any appraisal proceeding brought by any Class Member.

56.     The releases contemplated by the Stipulation and the Settlement extend to claims that the parties granting the release (the "Releasing Parties") do not know or suspect to exist at the time of the release, including, without limitation, claims which if known, might have affected the Releasing Parties' decision to grant the release.  Plaintiffs, each member of

the Class, the Company and its stockholders shall be deemed to (i) relinquish, to the extent applicable, and to the full extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code; and (ii) waive any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, any foreign jurisdiction, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

57. Plaintiffs acknowledge, and the members of the Class shall be deemed by operation of the entry of this Order and Final Judgment approving the Settlement to have acknowledged that the foregoing waiver (of the "Unknown Claims") was separately bargained for, is an integral element of the Stipulation and the Settlement, and was relied upon by each and all of the Defendants in entering into the Stipulation and the Settlement.

58. Plaintiffs' counsel is hereby awarded attorneys' fees and expenses in the amount of $538,568.69, which amount the Court finds to be fair and reasonable and which shall be paid to Plaintiffs' counsel in accordance with the terms of the Stipulation. The Court also finds to be fair and reasonable incentive payments of $2,000.00 each to Plaintiffs Walter Nakatsukasa and Plaintiff Christopher Shinneman to be paid from the amount of attorney's fees and expenses awarded.

59. Plaintiffs and Class Members, and any of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, are hereby individually and severally permanently barred and enjoined from commencing, prosecuting, instigating or in any way participating in the commencement or prosecution of any action asserting any Settled Claims, either

directly, representatively, derivatively or in any other capacity, against any of the Released Persons.

60.     The effectiveness of the provisions of this Order and Final Judgment and the obligations of Plaintiffs and Defendants under the Settlement were not conditioned upon Court approval of Plaintiffs' Counsel's application for an award of attorneys' fees, costs or expenses.

61.     Without affecting the finality of this Order and Final Judgment, jurisdiction is hereby retained by this Court for the purpose of protecting and implementing the Stipulation and the terms of this Order and Final Judgment, including the resolution of any disputes arising out of the Stipulation or Settlement, and for the entry of such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement and this Order and Final Judgment.

This the 1st day of July, 2015.

 /s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
  for Complex Business Cases